**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| THOMAS VIVIANO, | |
| Plaintiff, | CIVIL ACTION NO. 3:14-cv-1018 |
| v. | (JUDGE CAPUTO) |
| HAZLETON AREA SCHOOL DISTRICT and FRANCIS ANTONELLI, | |
| Defendants. | |

**MEMORANDUM**

Presently before the Court is a Motion to Dismiss Plaintiff's Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by Defendants Hazleton Area School District and Dr. Francis Antonelli (Doc. 14). Because Plaintiff alleges sufficient facts in his Amended Complaint (Doc. 13) to plausibly state a claim that the Defendants violated his rights to procedural due process and liberty as protected by the Due Process Clause, the Motion to Dismiss will be denied.

**I. Background**

**A. Factual Background**

The facts as set forth in the Second Amended Complaint (Doc. 13) are as follows:

Plaintiff Dr. Thomas Viviano was hired by Defendant Hazleton Area School District ("the District") to serve as the Director of the District's Career Center ("the Center") on or about June 4, 2013. (Doc. 13, ¶ 5.) Defendants hired Plaintiff pursuant to a three-year contract dated September 4, 2013. (*Id.* at ¶ 6.) That contract is attached as an exhibit to the Second Amended Complaint (Doc. 13-1).

Defendant Dr. Francis Antonelli is the Superintendent of the District.  (Doc. 13, ¶ 4.) The District is a municipal corporation or government entity within Pennsylvania.  (*Id.*)

Plaintiff Viviano asserts that he was a diligent employe; however, Defendants permitted a hostile work environment and attempted to prevent him from doing his job.  (*Id.*) Plaintiff asserts that he was hired as Director over the person who had been serving in that position as Acting Director, "Mrs. Herman."  (*Id.* at ¶ 10.)  Mrs. Herman had a close relationship with board members and Defendant Antonelli.  (*Id.* at ¶ 11.)  When Plaintiff was hired over Mrs. Herman, she was given the position of "Principal" at the Center.  (*Id.* at ¶ 10.) Mrs. Herman initiated a lawsuit when she was not selected for the Director position.  (*Id.* at ¶ 11.)  Plaintiff asserts that a board member told him that the board voted not to tell Plaintiff about this "political climate," because they feared he would not take the job if he knew.  (*Id.* at ¶ 12.)  After Plaintiff's hire, classroom bulletin boards had newspaper articles about a rally in support of another candidate for Plaintiff's position.  (*Id.* at 17.)

Plaintiff alleges that the job description for which he was hired in June 2013 was changed in February 2014.  (*Id.* at ¶ 13.)  These two descriptions are attached as exhibits to the Complaint.  (*Id.*)  When Plaintiff was hired, he was told that he would be assigned a principal over the summer to help him start the new school year.  (*Id.* at ¶ 14.)  However, Plaintiff did not receive a principal until October, because Mrs. Herman, the principal, was on medical leave from June to October.  (*Id.*)

Plaintiff began the school year with the help of an assistant principal instead of a principal.  (*Id.* at ¶ 15.)  At the beginning of the year, Plaintiff and the assistant principal assigned teacher duties.  *(Id.)*  When Mrs. Herman returned from leave in October, she

changed these arrangements. (*Id.*) Plaintiff reported this to Defendant Antonelli, who ruled in favor of Mrs. Herman, which made Plaintiff feel that his authority was undermined. (*Id.*)

When Plaintiff first arrived at the school in June, Antonelli informed him that he could not go to the Center that he had been hired to run, because the acting director, Mrs. Herman, was still in charge there. (*Id.* at ¶ 16.) Plaintiff was not allowed to enter the Center for two weeks, and instead had to work out of the district office. (*Id.*)

Plaintiff asserts that he repeatedly requested and was promised by the board that he would have a confidential secretary; however, he never received one. (*Id.* at ¶ 18.) Plaintiff contends that in the eighty-five (85) technical schools in the state, it is common practice for directors to have a confidential secretary. (*Id.* at ¶ 19.) The principal, Mrs. Herman, had three (3) secretaries. (*Id.* at ¶ 18.)

Plaintiff alleges that he was prohibited from entering any classrooms or laboratories, and that a school director has the right to visit these rooms at his discretion. (*Id.* at ¶ 20-21.) He was not given the designated director's office, a large office with windows and a private bathroom, but instead was given a "tiny" converted closet with no windows as his office, which he asserts was meant to send a message to the staff that he was not in charge. (*Id.* at ¶ 22.)    Plaintiff states that his decisions were "constantly" undermined by Mrs. Herman and by Defendant Antonelli. (*Id.* at ¶ 23.) At the Center, the principal is supposed to report directly to the director, and so the director supervises and evaluates the principal. This is how it worked with Plaintiff's predecessors. (*Id.* at ¶ 24.) However, Defendant Antonelli informed Plaintiff that he would supervise the principal instead. (*Id.*)

In one instance, there was a new teacher at the Center who needed a "mentor"

teacher, as required by Pennsylvania law.  (*Id.* at ¶ 25.)  Plaintiff assigned the new teacher a mentor teacher, and gave the form to a secretary to process.  (*Id.*)  When the assignment had not gone through after ten (10) days, Plaintiff questioned the secretary, who informed him that she had not turned in the paperwork.  (*Id.*)  Plaintiff learned that after he had made the mentor teacher assignment, the principal had spoken to Defendant Antonelli, and they had collaborated to assign the principal's sister to serve as the mentor teacher instead.  (*Id.* at ¶ 26.)  Plaintiff felt that this undermined his authority.  (*Id.*)

Plaintiff was prevented from taking part in the office budgeting process, a role that is supposed to be the director's, because Mrs. Herman completed and submitted it without giving the plaintiff a chance to give input or review it.  (*Id.* at ¶ 27.)  As a result, Plaintiff received negative feedback and a letter in his file reprimanding him as "remiss in his duties" for not participating in the budget process.  (*Id.* at 28.)  Plaintiff also received a reprimand letter in his file when he was fifteen (15) minutes late on one occasion.  (*Id.* at 29.)  However, he asserts that it was part of the job description to be out in the community and not in the office.  (*Id.*)  These disciplinary letters were placed in his personnel file, which he asserts were part of the public record since he was a public employee.  (*Id.* at ¶ 30.)

Plaintiff learned that a secretary was scrutinizing and sharing his confidential emails with other employees.  (*Id.* at ¶ 31.)  Plaintiff also learned that a secretary was taking photos of him while he was using his cell phone on his lunch break.  (*Id.* at ¶ 32.)  When Plaintiff reported this, the secretary was only given a warning.  (*Id.*)

By December 2013, Plaintiff states that it was clear to him that the school board, which had voted 5-4 to hire him, had shifted against him.  (*Id.* at ¶ 33.)  Plaintiff learned of

4

a rumor that the board was seeking to get rid of him and replace him with Mrs. Herman.  (*Id.*) Plaintiff asserts that Defendant Antonelli knew that Plaintiff was being forced out of his job, and the board knew that Defendant Antonelli wanted Plaintiff to resign.  (*Id.* at ¶ 35.)

Plaintiff alleges that he was subject to a conspiracy "perpetuated by the high officials of the District to destroy his career."  (*Id.* at ¶ 36.)  On or about March 31, 2014, Defendant Antonelli sent a letter that Plaintiff characterizes as "mendacious," alleging that Plaintiff had resigned his employment.  (*Id.* at ¶ 37.)  However, in reality, Antonelli was trying to force Plaintiff out of his job.  (*Id.*)

At some point, Plaintiff went in to discuss resignation, and was told that he had to leave immediately.  (*Id.* at ¶ 38.)  Plaintiff contends that he assumed he was fired at that point, and his salary and benefits ended.  (*Id.*)  Plaintiff asserts that he was not given thirty (30) days after he initially resigned.  (*Id.* at ¶ 39.)

Plaintiff did not submit his resignation until May, after he obtained another position.  (*Id.* at 40.)  Before this, the school board had voted unanimously to reject any resignation from him until then.  (*Id.*)  Plaintiff was informed by a Human Resources officer that "it's a small state, so he better be careful."  (*Id.* at ¶ 41.)

A member of the board, Dr. Robert Childs, sent a letter to the District officials criticizing them for their "outrageous and intentional conduct" against Plaintiff.  (*Id.* at ¶ 42.)  In this letter, attached to the Complaint as an exhibit, Dr. Childs wrote that Viviano was "being subjected to a campaign of character assassination that was utterly unfounded," and that Viviano was an "exemplary educator."  (Doc. 13-1.)  Dr. Childs wrote of his "alarm" at watching the board "force out" Viviano over the course of eight (8) months because some

members and Defendant Antonelli were upset that another candidate was not chosen for his job.  (*Id.*)  According to the letter, these members were "determined" to replace Viviano with their chosen candidate.  (*Id.*)

Plaintiff's attorney sent the District's attorney a letter on April 4, 2014, writing that his client "has been subjected to a series of untoward, adverse and inappropriate actions directed against him."  (Doc. 13 at ¶ 44; Doc. 13-1.)  Plaintiffs' attorney explicitly stated that Plaintiff had not resigned.  (Doc. 13-1.)  In the letter, Plaintiff's attorney included the letter that Childs had written.  (*Id* at ¶ 45.)  The District took no actions to redress the issues discussed in the letter.  (*Id.*)

The salary and benefits owed to Plaintiff in his contract were withheld without basis beginning in mid-March 2014, despite the fact that Plaintiff was not suspended or terminated.  (*Id.* at 47-9.)  Plaintiff argues that there was no legal basis or logical rationale for Defendants' "malicious course of conduct" against Plaintiff.  (*Id.* at 50.)  He asserts that they acted this way for the reasons set out in Childs' letter–namely, because they wanted to replace him with Mrs. Herman, who had been their chosen candidate.  (*Id.* at 51.)

Plaintiff asserts that Defendants took these actions notwithstanding the legal three-year contract between Plaintiff and the District.  (*Id.* at 52.)  As a result of Defendants' actions, Plaintiff had to accept a position that pays approximately $15,000 less than his Hazleton position.  (*Id.* at 56.)  Additionally, Plaintiff has had to seek psychological help.

**B. Procedural Background**

Plaintiff Viviano commenced the instant action on May 27, 2014. (Doc. 1.) On August 5, 2014, Plaintiff filed an Amended Complaint (Doc. 6). On August 19, Defendants filed a Motion to Dismiss for Failure to State a Claim (Doc. 8). On December 17, 2014, I issued an order granting Defendants' Motion to Dismiss, dismissing Plaintiff's Complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 12). In that order, I gave Plaintiff thirty (30) days to file an amended complaint, or it would be dismissed with prejudice.

On January 13, 2015, Plaintiff filed a Second Amended Complaint, asserting two (2) counts pursuant to 42 U.S.C. §§ 1983: violations of his right to procedural due process (Count I) and his right to liberty (Count II) (Doc. 13). Plaintiff asserts that Defendants' actions deprived him of his property interest in his job in violation of the fifth and fourteenth amendments, and also his liberty interest in his good name, in violation of the fourteenth amendment. Plaintiff requests compensatory damages, costs, and attorney fees from Defendant Hazleton Area School District, and punitive damages from individual Defendant Francis Antonelli. (Doc. 13, 10-11.)

On January 26, 2015, Defendants filed a Second Motion to Dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 14), and a Brief in Support (Doc. 16). On February 9, Plaintiff filed a Brief in Opposition (Doc. 17). On March 9, Defendants filed a Reply Brief (Doc. 18). The Motion to Dismiss is now fully briefed and ripe for disposition.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. When considering such a motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of his claims. See *Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). The Court does not consider whether a plaintiff will ultimately prevail. *See id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement required by Rule 8(a)(2) must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (*per curiam*) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009). As such, "[t]he touchstone of the pleading standard is plausibility." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. Cnty of Allegheny,* 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868.

In deciding a motion to dismiss, the Court should consider the complaint, exhibits attached to the complaint, and matters of public record. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993)). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Pension Benefit Guar.*, 998 F.2d

at 1196. The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n. 13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions.'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

### III. Discussion

In his Amended Complaint, Plaintiff Viviano asserts that Defendants Hazleton Area School District and Superintendent Francis Antonelli violated his Due Process Clause rights under two theories. First, by constructively discharging him before his contract ended, without adequate process, they deprived him of his property interest in continued employment. Second, they deprived him of his liberty interest in his good name, also protected by the due process clause, when they created stigma in connection with his job loss. This is referred to as a "stigma plus" claim. Defendants argue that the Second Amended Complaint fails to assert sufficient facts to demonstrate constructive discharge, stigma plus, or that Plaintiff is entitled to punitive damages from Defendant Viviano.

**A. Constructive Discharge**

The parties agree that Plaintiff ultimately resigned; however, Plaintiff asserts that it was the result of a constructive discharge. With respect to constructive discharge, "a court must determine 'whether a reasonable jury could find that the [employer] permitted conditions so unpleasant or difficult that a reasonable person would have felt compelled to resign.'" *Duffy v. Paper Magic Grp., Inc.*, 265 F.3d 163, 167 (3d Cir. 2001) (quoting *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 972 (3d Cir. 1998) (citations omitted)). With respect

10

to this issue, Defendants' main argument is that Plaintiff did not allege facts to plausibly state that Defendants effectuated a constructive discharge.

Accepting as true all statements in the Complaint, and resolving all possible inferences in favor of the plaintiff, Plaintiff Viviano has stated sufficient facts to demonstrate that he was constructively discharged by means of a work environment so unpleasant that a reasonable person would have felt compelled to resign. Reading the Complaint, he has pleaded sufficient facts to show that his work environment was extremely hostile, and Defendants permitted this. Defendants created conditions that were so unpleasant that a reasonable person would have felt compelled to resign: by giving him a converted closet without windows instead of the director's office, by undermining his teacher duty assignments and mentor teacher assignments, by refusing to provide him with a confidential secretary, as is custom, and by openly expressing that they preferred another candidate have his position. Furthermore, they placed that preferred candidate in his office, allowed her to make the important decisions that should have been his to make, and sided with her when she undermined his authority. Defendants permitted a situation to persist where Plaintiff was not allowed to enter the classrooms or laboratories at the Center where he was supposed to be in charge. Plaintiff's Second Amended Complaint contains sufficient specific factual allegations of constructive discharge to survive a motion to dismiss.

**B. Stigma**

Count II of Plaintiff's Complaint alleges that he was deprived of the right to liberty, as guaranteed by the Due Process Clause, when Defendants made false public statements about him in connection with his job loss, creating stigma. The Motion to Dismiss argues that the Complaint does not allege any public statements made in connection with his termination that caused stigma.

For a public employee to prevail under § 1983 on a theory of stigma in connection with a job loss, the employee must prove that stigmatizing statements about him were created and disseminated, and that he lost a tangible interest. *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006) (citing *Wisconsin v. Constantineau,* 400 U.S. 433 (1971)). Such statements must be false and made publically. *Id.* "When such a deprivation occurs, the employee is entitled to a name-clearing hearing." *Id*.

Plaintiff has successfully alleged the loss of his job, and as such, has alleged the loss of a "tangible interest," as required. He lost the pay and benefits owed to him under the three-year contract between Plaintiff and Defendants. The parties do not dispute that he received no name-clearing hearing.

The question remains whether Plaintiff alleged sufficient facts to plausibly demonstrate that Defendants publically made false, stigmatizing statements about him. In their Motion to Dismiss, Defendants correctly assert that Plaintiff was incorrect to allege that written reprimands in his personnel file were public information. (Doc. 14, ¶ 14.) Under Pennsylvania law, such information is protected under an exception to the state's public records laws. 65 Pa. Cons. Stat. Ann. § 67.708 (b)(7) (West).

Plaintiff alleges that the false, public statements made about him were that he

resigned prior to the date that he actually resigned. (Doc. 17, 11.) For a false statement to rise to the level of a due process violation warranting a name-clearing hearing, the statement must "infringe the 'reputation, honor, or integrity' of an individual." *Ersek v. Twp. of Springfield*, 102 F.3d 79, 83 (3d Cir. 1996) (quoting *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971)). Furthermore, "the disputed or false statements must harm the plaintiff." *Ersek*, 102 F.3d at 84.

Defendants dispute whether their statement that Plaintiff resigned was false. However, for the purposes of the motion to dismiss, I will take Plaintiff's version of events as true and assume it was false. Plaintiff sufficiently alleges that this false statement harmed him because it provided the defendants a basis for constructively discharging him. Based on the foregoing, Defendant's Motion to Dismiss Plaintiff's claims based on "stigma," Count II, will be *denied*.

**C. Punitive Damages**

Plaintiff's complaint contains a request for punitive damages to be assessed against Defendant Antonelli. Defendants argue that this request should be dismissed, as the Complaint does not allege sufficient facts to show that Antonelli's conduct rose to a level warranting punitive damages.

A jury may consider awarding punitive damages in an action brought under 42 U.S.C. § 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Assuming all facts stated in the Complaint as true, and resolving all possible inferences in favor of the Plaintiff, Plaintiff has alleged sufficient

facts to show that Defendant Antonelli may have acted with reckless or callous indifference to Plaintiff's federally protected right to due process.  I will allow his claim for punitive damages to proceed at this point, as he has stated enough facts that he is entitled to offer further evidence that Defendant Antonelli's behavior meets the standard required for punitive damages.  Thus, Defendant's motion to dismiss Plaintiff's request for punitive damages will be *denied*.

## IV. Conclusion

For the reasons stated above, Defendants' Motion to Dismiss will be *denied.*  An appropriate order follows.

| | |
|---|---|
| April 1, 2015<br>Date | /s/ A. Richard Caputo<br>A. Richard Caputo<br>United States District Judge |