UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS VIVIANO, | |
| Plaintiff, | CIVIL ACTION NO. 3:14-CV-01018 |
| v. | |
| HAZLETON AREA SCHOOL DISTRICT, et al., | (MEHALCHICK, M.J.) |
| Defendants. | |

**MEMORANDUM**

Presently pending before the Court is a motion for summary judgment in the above-captioned lawsuit, filed jointly on behalf of Defendants Hazleton Area School District and Superintendent Dr. Francis Antonelli on December 15, 2015. (Doc. 33). Defendants have also filed a motion to strike the declaration of Plaintiff Dr. Thomas Viviano. (Doc. 40). Upon detailed consideration of the arguments presented in the briefs, for the reasons provided herein, the Court will grant Defendants' motion for summary judgment and deny as moot Defendants' motion to strike.

**I. BACKGROUND**

    A. PROCEDURAL BACKGROUND

Plaintiff Dr. Thomas Viviano commenced this 42 U.S.C. § 1983 civil-rights action on May 27, 2014. On August 5, 2014, Plaintiff filed an amended complaint. (Doc. 6). On August 19, 2014, Defendants filed a motion to dismiss Plaintiff's amended complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 8). On December 17, 2014, the District Court issued an Order granting Defendants' motion to dismiss but permitting Plaintiff thirty (30) days to file an amended

complaint to cure the identified pleading deficiencies. (Doc. 12). On January 13, 2015, Plaintiff filed a second amended complaint in accordance with the District Court's Order dated December 17, 2014, seeking compensatory damages, costs, and attorney fees from Defendant Hazleton Area School District, and punitive damages from individual Defendant Superintendent Dr. Francis Antonelli, for alleged deprivations of Plaintiff's property interest in continued employment (Count I) and liberty interest in maintaining a good reputation (Count II), in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. (Doc. 13). On January 26, 2015, Defendants filed a second motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). On April 1, 2015, the District Court denied Defendants' motion to dismiss and permitted the parties to proceed through discovery.

On December 15, 2015, at the close of discovery, Defendants moved for summary judgment on Plaintiff's amended complaint. Together with this instant motion for summary judgment, Defendants submitted a statement of facts (Doc. 22), corresponding exhibits (Doc. 33), and a brief in support thereto (Doc. 23). On January 12, 2016, Plaintiff filed a brief in opposition to Defendants' motion for summary judgment (Doc. 38), submitted together with Plaintiff's sworn declaration, (Doc. 37-1), and a counter statement of facts (Doc. 37). On January 26, 2016, Defendants filed a reply brief. (Doc. 39). Having been fully briefed, this matter is now ripe for adjudication.

### B. MATERIAL FACTS

The facts relevant to Plaintiff's procedural due process property interest claim (Count I) and Plaintiff's procedural due process liberty interest claim (Count II), including those facts not disputed by the parties as well as those disputed facts viewed in the light most favorable to the

Plaintiff, are presented as follows. On June 4, 2013, Plaintiff was appointed by the Hazleton Area School District ("District"), following an interview process attended by Superintendent Dr. Francis Antonelli and members of the District's school board, to serve as the Director of Career and Technical Education of the District's Career Center pursuant to a three-year contract dated September 4, 2013. Prior to Plaintiff's hiring, Lori Herman ("Herman") had assumed the roles of both interim acting director and principal of the Career Center. While working in that capacity, Herman applied and was selected as a final candidate for the director position. However, Plaintiff was offered the director position over Herman. Soon thereafter, Herman resumed her previous duties as principal. (Doc. 33-1, at 3; Doc. 37, at 2). Although Herman opted to continue her employment with the District in the capacity of principal, she consequently threatened legal action against the District for what she deemed to be an improper hiring decision based on gender discrimination. By Plaintiff's account, Herman's threat of bringing a sex-discrimination suit against the District, coupled with Herman's connections with certain members of the school board and the general dissention arising out of Plaintiff's hiring, triggered a series of reactionary decisions by the District aimed at placating Herman at Plaintiff's expense, which culminated in his forced resignation.

Among his other contentions, Plaintiff claims that his job responsibilities were altered throughout his employment as director. For example, Plaintiff recalls that shortly after he filled the director vacancy towards the end of the school year in June of 2013, he was approached by Defendant Antonelli, who requested that Plaintiff refrain from interacting with the students, participating in school-related activities, and frequenting certain classrooms or work areas for the remainder of the school year, as the students and staff had apparently reacted unfavorably

to the appointment decision, creating a "somewhat hostile" learning environment.[1] Defendant Antonelli opined that it would be in "everyone's best interest" to conclude the school year with minimal conflict; therefore, Defendant Antonelli encouraged Plaintiff to "take over the reins as director at the beginning of a new school year, a fresh start."[2] (Doc. 33-3, at 4). Moreover, on February 27, 2014, Plaintiff's job description was officially redrafted to omit from Plaintiff's job description the responsibility of evaluating teachers, a duty Plaintiff claims was crucial to him having accepted the employment offer in the first place.

Plaintiff also contends that he was relegated to a different office than that previously assigned to his predecessor and occupied by Herman for the preceding four years while she had been acting director. Indeed, rather than relocate Herman from that office, Plaintiff received an office that had been enlarged and outfitted to accommodate his needs. Furthermore, Plaintiff maintains that he was not appointed a confidential secretary charged exclusively with reporting to him, but rather was assigned a secretary with whom he was required to share with other administrators. Yet, Plaintiff concedes that the school district employed only three confidential secretaries, all of whom worked in the central office for the superintendent, assistant superintendent and business office, not for building level administrators such as Plaintiff.

---

[1] The tension generated by the faculty and students stemming from the school board's appointment decision, as alluded to by Defendant Antonelli, was noticed by Plaintiff, as he observed at one point the presence of bulletin boards in the laboratory classrooms that displayed newspaper articles promoting a rally held in support of Herman for the director's position. (Doc. 33-1, at 3; Doc. 37, at 2).

[2] There has been no evidence presented that these conditions (i.e. denied interaction with students and access to certain laboratories) were permitted to persist the following school year.

Moreover, Plaintiff insists that Defendant Antonelli consistently favored Herman by undermining Plaintiff's decisions, specifically with respect to appointing an HVAC instructor to mentor a licensed practical nursing program instructor and absolving the requirement that teachers serve as hall monitors. To that end, Plaintiff perceived that Herman usurped responsibilities reserved for Plaintiff in attempt to sabotage Plaintiff. According to Plaintiff, while Plaintiff acknowledges that he willingly accepted Herman's offer to prepare the budget on his behalf—a task typically reserved for the director—Plaintiff contends that Herman then proceeded to submit a proposed budget to Defendant Antonelli without first reporting to and consulting with Plaintiff, who was her direct superior, thereby making it appear as though he was remiss in completing his responsibilities, which resulted in Plaintiff receiving a written reprimand in his personnel file for failing to prepare the budget. Plaintiff was allegedly subjected to further scrutiny in the form of another written warning on February 12, 2014 for purportedly arriving late to work without prior notification to the school district administration and for sleeping at his desk without an acceptable explanation, acts that Plaintiff believes were intended to blemish his job record and diminish his standing; although, admittedly, such write-ups did not impact his income or status.

On March 28, 2014, at approximately 10:00 a.m., Plaintiff attended a meeting scheduled by Assistant Superintendent Dr. Craig Butler, Defendant Antonelli, and Director of Human Resources for the District Jacqueline McHale, for the stated purpose of discussing Plaintiff's purported failure to follow through with the budgetary process for the Career Center. (Doc. 33-5, at 4). However, as asserted by Plaintiff, the focus of that meeting shifted due to Plaintiff's announcement to those present at the meeting of his intention to "resign with 30 days' notice."

(Doc. 33-2, at 16 ("[When I entered the meeting,] I had it in the back of my mind to resign with 30 days' notice.")). Based upon the testimony of Jacqueline McHale, which Plaintiff does not dispute, Plaintiff indicated to those in attendance that he was going to briefly leave the meeting to go to his office to write a resignation letter and compose himself and would return with the letter. That testimony is corroborated by an e-mail drafted by Plaintiff and sent to Jacqueline McHale at 10:53 a.m., shortly after the meeting, in which he explained that: "My office is pretty much cleaned out and my master key and badge are in the long center drawer. My computer is just in place so that the I.T. department can disengage my passwords etc. I felt that I wanted to compose myself a little before submitting my letter of resignation so I will send it to you via snail mail." (Doc. 5-4, at 2). Prior to sending that e-mail, Plaintiff sent an e-mail to a number of administrators in which he stated, in relevant part: "I am saddened to report that as of 3/28/14, I have resigned my position as director at the career and technical school here in Hazleton." (Doc. 5-4, at 1). Despite the content of these e-mails, Plaintiff insists that he did not actually resign, but rather, merely provided notice of his intent to resign. Plaintiff maintains in his declaration that he assumed he was fired at that meeting because Defendant Antonelli and Jacqueline McHale responded to his expressed intention to submit a letter of resignation with 30 days' notice by purportedly prompting him "to leave now."

At some point during this period, Plaintiff was informed of his right to have a hearing by Jacqueline McHale and Plaintiff admitted to understanding that he could ask for a hearing. However, Plaintiff never availed himself of that opportunity. On March 31, 2014, Plaintiff sent Jacqueline McHale a follow-up e-mail confirming that he would continue to receive his health benefits for the period he was searching for alternative employment and up until the time he

tendered his official resignation. (Doc. 33-5, at 22).[3] That same day, Defendant Antonelli sent a letter to Plaintiff confirming his March 28, 2014 resignation. Upon obtaining new employment, in May of 2014, Plaintiff submitted a formal letter of resignation. Upon receipt of Plaintiff's formal letter of resignation, the school board voted to accept Plaintiff's resignation at its May 2014 meeting.

Plaintiff asserts that Defendants' actions deprived him of his property interest in his continued employment and his liberty interest in his reputation, amounting to a violation of his right to due process.

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

A federal court should grant summary judgment "if the pleadings, depositions, answers

---

[3] There is no dispute, however, that Plaintiff was never denied benefits during this time and furthermore received accumulated vacation and sick days.

to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 278 (3d Cir. 2000). In making this determination, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249.

### III. DISCUSSION

#### A. COUNT I: DEPRIVATION OF A PROPERTY INTEREST

Plaintiff has asserted that Defendants violated his due process rights by constructively discharging him prior to his contract ending, thereby depriving him of his property interest in continued employment. Defendants move for summary judgment on Plaintiff's due process claim on the basis that Plaintiff has failed to present evidence to overcome the presumption of voluntary resignation.[4]

---

[4] At the outset, evaluation of whether Plaintiff has met his burden of producing sufficient evidence to overcome Defendants' motion for summary judgment has been made difficult due to Plaintiff's counsel's minimal citation to record evidence to support of many of his arguments presented in his brief in opposition. Rather curiously, aside from his reference to the deposition

"Procedural due process claims, to be valid, must allege state-sponsored deprivation of a protected interest in life, liberty, or property." *Organtini v. Methacton Sch. Dist.*, No. CIV.A. 06-02213, 2008 WL 324022, at *5 (E.D. Pa. Feb. 6, 2008) (citing *Zinermon v. Burch,* 494 U.S. 113, 125 (1989)). A public employee has a protected property interest in continued employment by the government. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 547–58 (1985). "Employee resignations and retirements are presumed to be voluntary." *Leheny v. City of Pittsburgh*, 183 F.3d 220, 227 (3d Cir. 1999) (citing *Angarita v. St. Louis County,* 981 F.2d 1537, 1544 (8th Cir. 1992)).To overcome this presumption, and thereby trigger the protections of the due process clause, the employee must present evidence demonstrating that the resignation or retirement was involuntarily procured through (1) coercion or duress or (2) deception or material misrepresentation. *Leheny*, 183 F.3d at 227 (citing *Hargray v. City of Hallandale,* 57 F.3d 1560, 1567 (11th Cir. 1995)). As here, Plaintiff has neither made allegations of nor introduced evidence supporting a conclusion that his resignation was induced through deception or material misrepresentation, the viability of Plaintiff's claim that he was constructively discharged ultimately depends on whether his decision to resign or retire was a product of coercion or duress. Indeed, to overcome the resumption that his resignation was voluntary, Plaintiff must provide evidence under which a reasonable jury could conclude that Defendants forced his resignation by coercion or duress.

---

testimony and letter of Dr. Robert Childs, counsel has primarily cited to specific allegations made in the second amended complaint and has generally phrased the brief in opposition in a manner that makes it seem as though he is opposing a motion to dismiss rather than a motion for summary judgment. (*See, e.g.,* Doc. 38, at 6 "Plaintiff has alleged specific factual allegations to state a claim of constructive discharge.")

In making this determination, the Court must examine the totality of the circumstances surrounding the employee's retirement or resignation to test whether the employee was effectively divested of his or her ability to exercise free choice, as the issue is one of whether the employee reasonably believed that he "had no other choice but to quit." *Leheny*, 183 F.3d at 227; *Lighton v. Univ. of Utah,* 209 F.3d 1213, 1222 (10th Cir. 2000); *see also Pa. State Police v. Suders,* 542 U.S. 129, 134 (2004). This inquiry into whether real alternatives were available to the employee is gauged by an objective standard rather than by the employee's own subjective perception of unfairness or harshness. *DeGroat v. DeFebo*, 87 F. Supp. 3d 706, 735 (M.D. Pa. 2015) (citation omitted); *Kosciolek v. Wilkes-Barre Fire Fighters Ass'n Local 104*, No. CIV.A. 3:04-CV-1920, 2006 WL 3742700, at *4 (M.D. Pa. Dec. 18, 2006), *aff'd sub nom. Turinski v. Local 104 Int'l Ass'n of Fire Fighters*, 269 F. App'x 184 (3d Cir. 2008). "That an employee may perceive his only option to be resignation . . . is irrelevant." *Kosciolek*, 2006 WL 3742700, at *4 (quoting *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 173 (4th Cir. 1988)). Moreover, "the mere fact that the choice is between comparably unpleasant alternatives . . . does not of itself establish that a resignation was induced by duress or coercion," as "a plaintiff faced with uninviting alternatives still has a choice." *Christie,* 518 F.2d at 587-88; *Stone,* 855 F.2d at 174; *Leheny*, 183 F.3d at 227 (holding that an employee who retires of his own free will, even though prompted to do so by some action of his employer, is deemed to have relinquished his property interest in his continued employment and cannot contend that he was deprived of his due process rights). Factors the court may consider when examining whether an employee was constructively discharged due to coercion or distress include whether the employee (1) was threatened with discharge, (2) encouraged to resign, (3) demoted, (4) subject to reduce pay or

benefits, (5) involuntarily transferred to a less desirable position, (6) subject to altered job responsibilities, or (7) given unsatisfactory job evaluations. *Burton v. Pa. State Police*, 990 F. Supp. 2d 478, 514 (M.D. Pa. 2014), *aff'd,* 612 F. App'x 124 (3d Cir. 2015) (citing *Colwell v. Rite Aid Corp.,* 602 F.3d 495, 503 (3d Cir. 2010) (herein referred to as the "*Colwell* factors")). Another similar test employed in this context requires the court to consider whether the employee "(1) was presented with an alternative to resignation, (2) understood the nature of the choice she was given, (3) had a reasonable time to choose, (4) was permitted to select the effective date of her resignation, and (5) had the advice of counsel." *Mayo v. Bangor Area Sch. Dist.*, No. 11-CV-06026, 2013 WL 3716533, at *10 (E.D. Pa. July 16, 2013) (citing *O'Connell v. Cnty. of Northampton*, 79 F. Supp. 2d 529, 533 (E.D. Pa. 1999) (herein referred to as the "*O'Connell* factors")).

Here, Plaintiff's constructive discharge claim is predicated on allegations that Defendants: (1) relegated him to a converted closet without windows rather than providing him with his predecessor's office; (2) consistently undermined his decisions with respect to teacher assignments and mentor assignments; (3) denied him a confidential secretary; (4) excluded him from participating in student activities and frequenting classrooms; and (5) gave preferential treatment to Herman by placing her in his office, allowing her to make important decisions that should have been his to make, and siding with her when she undermined Plaintiff's authority. While Plaintiff's allegations of constructive discharge were sufficient to overcome Defendants' motion to dismiss, Plaintiff has since adduced no additional evidence from which a reasonable jury could conclude that he was constructively discharged. Indeed, guided by the aforementioned benchmark legal principles, upon detailed review of the record before it, the

Court can discern no evidence supporting that Plaintiff was subjected to objectively intolerable working conditions.

In applying the *Colwell* factors, the record evidence demonstrates that Plaintiff was never (1) explicitly threatened with discharge, (2) encouraged to resign, (3) demoted, (4) subject to reduced pay or benefits, or (5) involuntarily transferred to a less desirable position. While Plaintiff has produced evidence arguably satisfying the remaining two *Colwell* factors; namely, that (6) his job responsibilities were altered—specifically with respect to the elimination of evaluating instructors from his job description and the refusal to permit Plaintiff access to certain classrooms for a brief period when Plaintiff first began as director—and that (7) Plaintiff was written up on two occasions for minor infractions, such modest evidence is insufficient to show that Plaintiff was constructively discharged. Indeed, with respect to Plaintiff's claim that he was relieved of a previous job responsibility and that he was excluded from certain activities, no reasonable trier of fact could conclude that such changes effectively rendered his working conditions objectively intolerable. This conclusion is supported by Plaintiff's admission that notwithstanding his desire to retain the ability to evaluate instructors, it was appropriate for Herman, as the principal, to manage such day-to-day operations, and by the lack of evidence produced that suggests that such exclusion from classrooms was anything but temporary. (Doc. 33-1, at 6; Doc. 37, at 5); *Duffy v. Paper Magic Grp., Inc.*, 265 F.3d 163 (3d Cir. 2001) ("[N]o reasonable trier of fact could conclude that exclusion from committee membership or lack of hiring authority renders working conditions objectively intolerable.") (citing *Gray*, 957 F.2d at 1083 ("The law does not permit an employee's subjective perceptions to govern a claim of constructive discharge.")). Moreover, Plaintiff's argument that he was subjected to

overzealous supervision in a calculated effort to procure his resignation, evidenced by the issuance of written reprimands for arriving late to work on one occasion and for purportedly sleeping while at work on another occasion, is likewise unavailing, as Plaintiff has neither submitted evidence supporting that these write-ups altered his job responsibilities or resulted in a reduction of pay or benefits, nor proffered sufficient evidence supporting that Defendants "imposed unreasonably exacting standards of [his] job performance" as compared to other high-ranking administrators. *Duffy*, 265 F.3d at 169; *see Clowes v. Allegheny Valley Hospital,* 991 F.2d 1159 (3d Cir. 1993) (rejecting plaintiff's claim of constructive discharge based upon her belief that she was "singled . . . out for especially close and harsh supervision" by her supervisor, absent additional evidence demonstrating that her employer altered her job responsibilities, demoted her, threatened her with discharge, reduced her pay or otherwise transferred her to a less desirable position).

In applying the *O'Connell* factors, it is clear from the record evidence that Plaintiff: (1) was presented with an alternative to resignation, as it was undisputed that, had he not resigned, he would have continued to be employed; (2) understood the nature of the choices available to him, as it is further undisputed that he was informed of his right to a hearing, but did not avail himself of that opportunity, opting to resign instead; (3) had a reasonable time to choose amongst his options, as he admits that he entered the meeting on March 28, 2014 with an intention to resign with 30 days' notice, sent an e-mail announcing his resignation after the meeting, and submitted a formal resignation on May 20, 2014 upon finding alternative

employment; and (4) was permitted to select the date of his resignation, as he only submitted his official resignation upon obtaining alternative employment.[5] Thus, it is apparent from the record when considering these factors that Plaintiff simply "made a choice between working in an unpleasant environment and resigning. More specifically, the record evidence demonstrates that plaintiff made a voluntary, informed decision . . . ." *Mayo v. Bangor Area Sch. Dist.*, No. 11-CV-06026, 2013 WL 3716533, at *14 (E.D. Pa. July 16, 2013).

Even in viewing Plaintiff's remaining allegations together with the evidence produced in support thereof in the light most favorable to Plaintiff, including the letter submitted by Dr. Robert Childs detailing his observation that Plaintiff was not receiving support from the school board, it is clear that no reasonable trier of fact presented with "the litany of real or perceived slights suffered by [P]laintiff, alone or collectively, could conclude that he suffered under conditions that could be objectively described as so intolerable that he had no course but to quit." *Lebofsky v. City of Phila.*, No. CIV. A. 06-CV-5106, 2009 WL 1507581, at *21 (E.D. Pa.

---

[5] The controverted evidence with respect to whether Plaintiff merely gave notice of his intent to resign or tendered his resignation to be effective on March 28, 2014, and whether Defendants improperly misconstrued Plaintiff's notice of his intent to resign as his actual resignation or dismissed him immediately upon receiving his notice of resignation, is simply immaterial to the analysis of whether he was constructively discharged in the first place, as such allegations detail events that occurred after he gave notice of his resignation. Specifically, Plaintiff submits that he subjectively believed that he was being immediately dismissed upon tendering his notice of his intent to resign at the March 28, 2014 meeting, thereby prompting him to clear out his office and not return to work. Yet, Plaintiff's representation concerning how he interpreted Defendants' reaction to his providing notice of his intent to resign does not create a genuine issue of material fact as to whether his work conditions leading up to his resignation were so objectively intolerable that a reasonable person would feel compelled to resign.

- 14 -

May 29, 2009), *aff'd,* 394 F. App'x 935 (3d Cir. 2010) (affirming the district court's grant of summary judgment in favor of defendants on plaintiff's constructive discharge claim based on plaintiff's contentions that he was (1) assigned undesirable work projects, (2) moved to a substandard office, (3) denied use of secretarial and administrative staff, and (4) barred from attending meetings to which he had been previously invited, among other complaints). With respect to Plaintiff's argument that he was provided with inferior office accommodations, characterized by Plaintiff as a converted storage closet, rather than Herman's office, Plaintiff concedes that his office was renovated and enlarged to accommodate his needs and does not present evidence to rebut Defendant Antonelli's testimony that Plaintiff's office was "a guidance counselor's office, or possibly the guidance counselor's secretary['s] [office] at one point in time" that Defendants renovated by "knock[ing] out a wall [to] basically double[ ] the size of the office" and that Defendant Antonelli "took a personal interest in whatever he needed, lighting, furniture, carpeting, [as] [he] was happy to do all [he] could do to see that [Plaintiff] was satisfied with the office arrangements." (Doc. 33-3, at 10). Moreover, the record is devoid of evidence that Plaintiff, at any time during his employment, voiced his disapproval with his office space, or that his office space was in any way inferior to his predecessor's office, which had been occupied by Herman for the preceding four years. In fact, the record contains an e-mail in which Plaintiff appears to decline an offer to "mov[e] [him] into the district office" in an effort to separate him from Herman. (Doc. 33-3, at 38). As for Plaintiff's complaint that he was consistently undermined by Defendant Antonelli at the direction of Herman, Plaintiff only proffers evidence detailing two instances in which his decisions were overturned by Defendant Antonelli—his decision to hire an HVAC instructor as a teacher-mentor and his

decision to eliminate hallway monitors.[6] While admittedly frustrating that Plaintiff's decisions were vetoed, that does not render his working conditions intolerable, especially given that Plaintiff has not presented any additional evidence suggesting that his ability to perform his job was compromised as a result of a higher-ranking decisionmaker rejecting his appointment of the HVAC instructor and his policy change regarding hallway monitors.  As for the denial of Plaintiff's request for a confidential secretary, Plaintiff concedes that he was given secretarial assistance and furthermore acknowledges that confidential secretaries were reserved only for positions located in the central office. Moreover, there has been no evidence produced that other directors at the building level were assigned a confidential secretary or that he required a confidential secretary in order to perform the responsibilities associated with his position as director.[7]

---

[6] While Plaintiff appears to argue that Herman "usurped" his authority by preparing and submitting the proposed budget to Defendant Antonelli without consulting him first—a responsibility reserved to Plaintiff—no evidence has been produced indicating that Plaintiff even attempted to discuss the preparation of the budget with Herman, let alone that he voiced to Herman his expectation that he first review the budget prior to her submitting it. Rather, the record evidence reveals that Plaintiff accepted Herman's offer to complete the budget on his behalf because she "ha[d] a handle on this," and that he was "not too concerned about the budget . . . as she has the experience." Such evidence, at best, would create an inference that he had surrendered his control and oversight over the budgetary process to Herman and that Herman acted accordingly.

[7] Notably, while Plaintiff argues that the secretary assigned to him was sharing Plaintiff's personal e-mails, Plaintiff has offered no evidence to substantiate this position. Indeed, Plaintiff admits that he never directly observed his secretary in the act of disseminating his confidential communications but rather, was informed of this fact from another employee. However, Plaintiff has not produced any witness testimony or documentary evidence to that effect. In the absence of testimony from a witness who observed Plaintiff's secretary committing that act, Plaintiff's reliance on what another co-worker told him constitutes inadmissible hearsay and cannot be used to defeat a properly supported motion for summary judgment.

While the Court certainly empathizes with Plaintiff, whose brief tenure as director of the Career Center for the District was less than ideal or harmonious, the circumstances of Plaintiff's resignation as illustrated by the record evidence in this case simply would not permit a reasonable trier of fact to conclude that Plaintiff's employment situation reached the threshold of intolerable conditions as is necessary to invoke the doctrine of constructive discharge. *Clowes v. Allegheny Valley Hospital,* 991 F.2d 1159, 1162 (3d Cir.1993) ("[I]t is clear that unfair and unwarranted treatment is by no means the same as constructive discharge."). Accordingly, the Court will grant summary judgment in favor of Defendants on Plaintiff's procedural due process claim (Count I). [8]

---

*Nanticoke Mem'l Hosp.*, 192 F.3d 378, 387 n.13 (3d Cir. 1999) (noting that "it is not proper" to consider evidence that would not be admissible at trial "on summary judgment"); *Smith v. City of Allentown*, 589 F.3d 684, 693 (3d Cir. 2009) ("Hearsay statements that would be inadmissible at trial may not be considered for the purposes of summary judgment."). More importantly, even assuming, *arguendo*, that Plaintiff could show that his secretary shared his personal e-mails, Plaintiff fails to demonstrate that Defendants were aware of, and acquiesced to, such improper conduct.

[8] Having found that summary judgment in favor of Defendants is appropriate upon detailed review of the record before it, the Court will deny as moot Defendants' motion to strike Plaintiff's declaration. While the Court need not address the merits of Defendants' motion to strike, it bears mentioning that the Court does not agree with Defendants' position that Plaintiff has submitted a sham affidavit in an effort to overcome summary judgment, as the statements contained in that declaration do not overtly contradict any testimony Plaintiff made in his deposition. Nevertheless, the Court observes that a number of Plaintiff's representations merely amount to uncorroborated speculation, as illustrated by the Plaintiff's unsupported statement that he "gave paperwork and a directive to the front desk secretary to appoint a teacher as a mentor teacher and told her to submit it to the superintendent. Ten days later when I didn't hear anything, I approached the secretary and she still had it on her desk. This was enough time for the principal to approach the superintendent and collaboratively undermine my appointment and choose the principal's sister. . . . This was a sister taking care of a sister." (Doc. 37-1, at 3); (*see, e.g.*, Doc. 37-1, at 3 ("With respect to Defendants' Statement of Material

B. COUNT II: DEPRIVATION OF A LIBERTY INTEREST

Defendants also move for summary judgment on Plaintiff's liberty interest due process claim. Plaintiff asserts that he was deprived of his liberty interest in reputation in violation of the due process clause when he was constructively discharged

An individual has a protectable interest in reputation. *Wisconsin v. Constantineau*, 400 U.S. 433 (1971). Indeed, "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Id.* at 437. However, as courts have subsequently clarified, reputation alone, apart from any other right or interest, is not an interest protected by the Due Process Clause. *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006). Thus, in order to prevail on a "due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation plus deprivation of some additional right or interest." *Id.* (citing *Paul v. Davis,* 424 U.S. 693, 701 (1976)). "This has been referred to as the 'stigma-plus' test." *Dee v. Borough of Dunmore,* 549 F.3d 225, 233–34 (3d Cir. 2008). When such a deprivation occurs, the employee is entitled to a name-clearing hearing.

---

Fact No. 22, there was no scale altercation. This was concocted.")). More importantly, however, Plaintiff's declaration is deficient in the sense that it is riddled with Plaintiff's subjective perceptions, which cannot govern a claim of constructive discharge. *Bristow v. Daily Press, Inc.,* 770 F.2d 1251, 1255 (4th Cir. 1985), *cert. denied* 475 U.S. 1082 ("[T]he law does not permit an employee's subjective perceptions to govern a claim of constructive discharge. Every job has its frustrations, challenges, and disappointments these inhere in the nature of the work. . . . [An employee] is not . . . guaranteed a working environment free of stress."); (*see, e.g.,* Doc. 37-1, at 1 ("When they told me to leave now, I *assumed* I was fired. I *feared* that I would have no benefits. . . . I *felt powerless* to make her submit the budget to me first . . . .") (emphasis added)).

To satisfy the "plus" prong of the stigma-plus test, a plaintiff must demonstrate an "alteration of extinguishment of 'a right or status previously recognized by state law.'" A constitutionally protected property interest can qualify as a sufficient "plus." *Dee,* 549 F.3d at 234. It is undisputed that Plaintiff has established the "plus" prong of his stigma-plus claim, as he has a protected property interest in the continuation of his employment as described in detail above. To satisfy the "stigma" prong in the public employment context, an employee must adduce sufficient evidence supporting that the employer "creat[ed] and disseminate[d] a false and defamatory impression about the employee in connection with his termination." Specifically, the employee must show that the purportedly stigmatizing statement (1) was made publicly and (2) was substantially and materially false. *Kocher v. Larksville Borough*, 548 F. App'x 813, 820 (3d Cir.2013) (citing *Hill*, 455 F.3d at 236); *Ersek v. Twp. of Springfield*, 102 F.3d 79, 83–84 (3d Cir.1996) ("For government action to infringe the 'reputation, honor, or integrity' of an individual, that government action first must involve a publication that is substantially and materially false."). Here, Plaintiff asserts that Defendants damaged his reputation by concocting an argument that he had resigned on March 28, 2014, as evidenced by Defendant Antonelli's letter to Plaintiff acknowledging his resignation on March 31, 2014, when in fact, Defendants did not officially accept Plaintiff's resignation until his formal letter of resignation was received in May of 2014. However, as correctly argued by Defendants, Plaintiff fails to produce evidence to satisfy the requirement that the purportedly stigmatizing statement be made publicly. Indeed, regardless of whether the statement at issue was substantially and materially false, no evidence exists in the record to support that Defendant Antonelli's letter to Plaintiff confirming his resignation was made public. Rather, the evidence allows for an

inference to be made that the letter was sent directly to Plaintiff and only Plaintiff.[9] Accordingly, as Plaintiff has failed to present any evidence from which a reasonable factfinder could conclude that Defendants made a false public statement against Plaintiff, Defendants' motion for summary judgment will be granted on Plaintiff's "stigma plus" claim (Count II).[10]

## IV.  CONCLUSION

Based upon the foregoing, the Court will **GRANT** Defendants' motion for summary judgment (Doc. 33), and **DENY AS MOOT** Defendants' motion to strike Plaintiff's sworn declaration (Doc. 40).

An appropriate Order follows.

Dated: August 19, 2016                                              *s/ Karoline Mehalchick*
                                                                    **KAROLINE MEHALCHICK**
                                                                    **United States Magistrate Judge**

---

[9] In Plaintiff's brief in opposition, Plaintiff, without any citation to the record, off-handedly remarks that Dr. Robert Childs' letter refers to "public statements made against Plaintiff." He concludes that Dr. Robert Childs' letter itself establishes the existence of "stigma." However, the Court can discern no reference in Dr. Robert Childs' letter to "public statements made against Plaintiff." (Doc. 33-4, at 17-18). Moreover, this reference to a general, conclusory, unsupported statement purportedly made by a board member that a public statement was made about Plaintiff, without providing any specifics as to what statement was made, who it was made by, and who it was made to, is wholly insufficient for purposes of opposing Defendants' motion for summary judgment. (Doc. 38, at 12).

[10] As the Court has determined that no constitutional violation occurred here, it will not address Defendants' arguments with respect to Plaintiff's claim for punitive damages against Defendant Antonelli.